Scott A. Kamber
skamber@kamberlaw.com
David A. Stampley
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:  (212) 920-3072
Facsimile:   (212) 202-6364

Avi Kreitenberg (SBN 266571)
akreitenberg@kamberlaw.com
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, California 90035
Telephone:  (310) 400-1050
Facsimile:   (310) 400-1056

Plaintiffs' Counsel
Additional counsel listed on signature page

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY DAVIS, *et al.*<br>        Plaintiffs,<br><br>v.<br><br>VIDEOEGG, INC.,<br>        Defendant. | Case No. 2:10-cv-07112-GW-JCG<br>[Assigned to the Hon. George H. Wu]<br>**PLAINTIFFS' NOTICE OF MOTION AND BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**<br>Date:        February 28, 2011<br>Location:   Courtroom 10<br>               312 N. Spring Street<br>               Los Angeles, CA 90012<br>Time:        8:30 a.m. |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that the plaintiffs in the above-captioned matter ("Plaintiffs") will, pursuant to Federal Rule of Civil Procedure 23(e), move that the above-named Court grant preliminary approval of a proposed settlement (the "Settlement"), including a settlement agreement (the "Settlement Agreement") in this class action matter, before the Honorable George H. Wu on February 28, 2011 at 8:30 a.m. or at such other time as may be set by the Court.

1       The terms of this settlement are substantially the same as those proposed in

2    the related matters of *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-

3    05484-GW and *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW

4    and, as to administration of notice, are part of the notice plan in those settlements.

5       Plaintiffs seek preliminary approval of this class action Settlement Agree-

6    ment, certification of the proposed class for settlement purposes, provision of no-

7    tice to the Settlement Class, and appointment of Plaintiffs as class representatives

8    and their counsel as class counsel. The Motion is based on this Notice of Motion,

9    Plaintiffs' Brief in Support of the Motion and the authorities cited therein, oral

10    argument of counsel, and any other matters that may be submitted at the hearing

11    or at the request of the Court.

12    DATED: February 18, 2011        KAMBERLAW, LLC

s/Avi Kreitenberg
Scott A. Kamber
skamber@kamberlaw.com
David A. Stampley
dstampley@kamberlaw.com
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:  (212) 920-3072
Facsimile:  (212) 920-3081

Avi Kreitenberg (SBN 266571)
akreitenberg@kamberlaw.com
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, California 90035
Telephone:  (310) 400-1050
Facsimile:  (310) 400-1056

Joseph H. Malley
malleylaw@gmail.com
Law Office of Joseph H. Malley
1045 North Zang Boulevard
Dallas, TX 75208
Telephone:  (214) 943-6100
Facsimile:  (214) 943-6170

# TABLE OF CONTENTS

NOTICE OF MOTION ..................................................................................... i

TABLE OF AUTHORITIES .......................................................................... iv

BRIEF IN SUPPORT OF MOTION ............................................................. 1

I.   NATURE OF THE LITIGATION ....................................................... 4

   A.   The Complaint at Issue ............................................................. 4

   B.   Mediation and Settlement ......................................................... 4

   C.   Defendant's Position ................................................................. 5

II.   TERMS OF THE SETTLEMENT ...................................................... 5

   A.   Definitions ................................................................................. 5

   B.   General Relief ........................................................................... 7

   C.   Additional Relief ...................................................................... 8

   D.   Release ...................................................................................... 9

III.   PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ... 9

   A.   Numerosity Requirement Satified ........................................... 10

   B.   Commonality Requirement Satified ........................................ 10

   C.   Typicality Requirement Satified .............................................. 11

   D.   Adequate Representation Requirement Satified ...................... 12

   E.   Rule 23(b)(3) Requirements Met by Proposed Settlement Class ..... 12

IV.   SCOTT A. KAMBER AND DAVID A. STAMPLEY OF KAMBERLAW SHOULD BE APPOINTED CLASS COUNSEL .. 13

V.   PRELIMINARILY APPROVAL WARRANTED ............................. 14

VI.   PROPOSED CLASS NOTICE PLAN ............................................. 17

VII.   CONCLUSION ................................................................................ 17

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)..................................... 10, 13

*Armstrong v. Bd. of Schl. Dirs. of City of Milwaukee*, 616 F.2d 305
  (7th Cir. 1980).................................................................................... 15

*Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) ......................... 10

*Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168 (9th Cir. 2007) .............................. 11, 12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................. 15

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359 (N.D. Ohio 2001).... 16

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ........................... 15, 16

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........... 15

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)........... 15

*Pierce v. County of Orange*, 519 F.3d 985 (9th Cir. 2008) ................................ 13

## Other Authorities

*DeLise v. Fahrenheit Entm't*, Civ. Action No. CV-014297 (Cal. Sup. Ct. Marin
  Cty. Sept. 2001) ............................................................................... 16

*In Re DoubleClick, Inc. Privacy Litigation*, No. 00 Civ. 0641 (NRB)
  (S.D.N.Y. 2001) ................................................................................ 16

## Rules

Federal Rule of Civil Procedure 23(a)................................................................ 10

Federal Rule of Civil Procedure 23(a)(1)........................................................... 10

Federal Rule of Civil Procedure 23(a)(2)........................................................... 11

Federal Rule of Civil Procedure 23(a)(3)........................................................... 12

Federal Rule of Civil Procedure 23(a)(4)........................................................... 12

Federal Rule of Civil Procedure 23(b)(3)..................................................... 10, 13

Federal Rule of Civil Procedure 23(c)(2)(B)...................................................... 17

Federal Rule of Civil Procedure 23(e)....................................................... 14, 16, 17

Federal Rule of Civil Procedure 23(e)(1) .............................................................. 17

Federal Rule of Civil Procedure 23(g)(1) .............................................................. 14

**Treatises**

Alba & Conte, 4 *Newberg on Class Actions*, §11.25 (4th Ed. 2002) .................. 15

Alba & Conte, 4 *Newberg on Class Actions*, §11.53 (4th Ed. 2002) .................. 17

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) .................................... 10

*Manual for Complex Litigation* § 30.41 (3rd ed. 1995) ..................................... 15

**BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT**

In this putative class action, Plaintiffs seek relief based on their allegations that Defendant VideoEgg, Inc. ("VideoEgg") bypassed class members' browser privacy controls in order to track class members' Internet activities in a way that class members would not expect or detect. Plaintiffs allege that Adobe Flash local shared objects ("LSOs," sometimes referred to as "Flash cookies") were used to track their web activities without their knowledge or consent, that they did not receive adequate notice or choice about the use of LSOs, and that the Defendant's actions violated the Plaintiffs' privacy rights, implicating a number of state and federal statutes.

As explained more fully below, as a result of the proposed settlement, Defendant VideoEgg has stated it has not employed LSOs as alleged by Plaintiffs, and it agrees not to use Adobe Flash capabilities in certain undisclosed ways, including ways that would tend to circumvent users' browser controls for uses of browser cookies.[1]

Further, the Settlement provides for eight hundred twenty-five thousand dollars ($825,000) in *cy pres* payments to one or more non-profit organizations identified by Plaintiffs to fund research and education projects and activities to promote consumer awareness and choice regarding the privacy, safety, and security of electronic information from and about consumers.

VideoEgg is an online third-party service provider. It provides ad delivery and web traffic analysis services on consumer-facing websites. VideoEgg provides services to many websites. VideoEgg's services include displaying targeted

---

[1]   In settling the case and agreeing to the injunctive relief, Defendant does not admit to the allegations of the Complaint and VideoEgg denies that it presently uses LSO's in the offending manner.

---

advertisements to website visitors, analyzing website traffic, and providing technology that other companies can use to interact with consumers browsing the web. For consumers visiting a website, VideoEgg is considered a "third party" that provides services to the websites. Many of these websites are supported by advertising and many of them monitor visitor activity to assess the popularity of their web pages. Because VideoEgg provides advertising and measurement services to those websites, consumers who visit those websites are brought into direct contact with VideoEgg, even though the consumers may not be aware of it.

Browsers are designed to provide users rudimentary controls to manage third parties' use of cookies to track and profile users. Users who do not want third parties' cookies to be stored on their computerscan set their browser controls to block third-party cookies. Users can also delete previously stored, third-party cookies.

However, VideoEgg, like some other third-party service providers, used Adobe Flash local shared objects ("LSOs," which have also been called "Flash Cookies") in its interactions with website visitors. Adobe Corporation has stated that LSOs were designed to support consumers' ability to experience "rich Internet application" content using the Adobe Flash Player. Plaintiffs allege that VideoEgg stored LSOs on users' computers to perform cookie-like functions of collecting information from and about users—even users who had set their browser privacy settings to block third-party cookies. VideoEgg does not concede that Plaintiffs' factual contentions are accurate.

The class action complaint filed by the Plaintiffs alleged the Defendant used LSOs to circumvent users' blocking or deleting of  browser cookies. The Plaintiffs claimed they did not receive adequate notice or choice about the use of LSOs and that the Defendant's actions violated the Plaintiffs' privacy rights. The complaint alleged the Defendant's practices violated the following federal statutes, California statutes, and common-law legal rights: the Computer Fraud and

1  Abuse Act, Title 18, United States Code, Section 1030; the Computer Crime Law,

2  California Penal Code, Section 502; the Invasion of Privacy Act, California Penal

3  Code, Section 630; the Unfair Competition Law, California Business and Profes-

4  sions, Section 17200; the Consumer Legal Remedies Act, California Civil Code,

5  Section 1750; Trespass to Personal Property/Chattels; and Unjust Enrichment.

6      Representatives of the parties met and engaged in substantial private set-

7  tlement mediation discussions before Rodney A. Max on January 15, 2011. This

8  effort enabled the parties to reach an agreement in principle in connection with

9  this mediation and through extensive, ongoing negotiations between the principal

10  lawyers for the class (Messrs. Kamber and Stampley), and VideoEgg (Mr. Kan-

11  trow). A true copy of the stipulated Settlement Agreement (the "Settlement

12  Agreement") is submitted herewith as Exhibit A.

13      Under the Settlement Agreement, VideoEgg represents that it will not

14  "employ LSOs to: (i) serve as an alternative method to HTTP cookies for storing

15  information about a user's web browsing history, unrelated to the delivery of con-

16  tent through the Flash Player or the performance of the Flash Player in delivering

17  such content, without adequate disclosure; and/or (ii) otherwise counteract any

18  computer user's decision to either prevent the use of or to delete previously cre-

19  ated HTTP cookies." (Settlement Agreement, sec. 4.19.)

20      Given the challenges and uncertainties facing Plaintiffs if they were to liti-

21  gate this matter, the results achieved through the Settlement are well beyond those

22  required to satisfy preliminary approval standards. Accordingly, Plaintiffs move

23  the Court to preliminarily approve the instant Settlement; certify the Settlement

24  class; appoint Timothy Davis, Jessica Fishbein, Jeff Hall, and Amanda Spear as

25  class representatives; and Scott A. Kamber and David A. Stampley of Kamber-

26  Law, LLC, as class counsel.

27

28

# I.  NATURE OF THE LITIGATION

## A.  The Complaint at Issue

On September 23, 2010, the *Davis, et al. v. VideoEgg, Inc.* complaint was filed, alleging violations of (i) the Computer Fraud and Abuse Act, 18 U.S.C. 1030; (ii) California's Computer Crime Law, Penal Code § 502; (iii) California's Invasion of Privacy Act, California Penal Code § 630; (iv) the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200; (v) the California Consumer Legal Remedies Act; (vi) Unjust Enrichment; and (vii) Trespass to Personal Property/Chattel. On October 6, 2010, the *Davis, et al. v. VideoEgg, Inc.* action was found to be related to *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW-JCG and *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW-JCG.

## B.  Mediation and Settlement

In November, 2010, representatives of Plaintiffs and Defendant initiated settlement negotiations that included, among other things, in-person mediation conducted on January 15, 2011, during which the participants candidly aired the strengths and weaknesses of their respective litigation positions. (Stampley Decl., ¶¶ 7, 7(a).)

The January 15, 2011 mediation resulted in a tentative accord on an agreement in principal for the resolution of all claims alleged against Defendant in the Litigation, subject to additional negotiations. The Parties' thereafter reached agreement on final settlement documentation, including this Settlement Agreement. The product at the end of the mediation session was a memorialized agreement on all substantive relief. (Stampley Decl. ¶ 7(a).) The parties did not discuss the amount of any incentive fee or payment to class counsel until after reaching agreement on the other terms of settlement. (Stampley Decl. ¶ 7(b).) The parties now seek preliminary approval of this long-negotiated settlement.

**C.    Defendant's Position**

At all times, Defendant has denied and continues to deny any wrongdoing whatsoever or that it committed or has threatened or attempted to commit, any wrongful acts or violations of law or duty, including, but not limited to, those alleged in the Complaint. (Stampley Decl. ¶ 6.) Defendant, contending it has acted properly, denies that the allegations of the complaint entitle Plaintiffs and putative class members to any damages. (*Id.*) Defendant has maintained and continues to maintain it is able to raise meritorious defenses to all allegations in the Complaint and is willing to mount a vigorous defense in the litigation of claims. (*Id.*)

## II.    TERMS OF THE SETTLEMENT

The key terms of the Settlement are detailed below.

**A.    Definitions**

1.    Section 1.1 of the Settlement Agreement defines "Class" as:

All persons in the United States who, during the Class Period, used any web browsing program on any device to access one or more web sites or online content employing any of VideoEgg's technologies involving the use of local shared objects stored in Adobe Flash Player local storage ("LSOs"). Section 1.7 of the Settlement Agreement defines "Defendant" as "includ[ing] Say Media and other affiliated, related, and successor companies. However Six Apart's conduct prior to the September 2010 merger shall not be released.

2.    Section 1.10 of the Settlement Agreement defines "Preliminary Approval Date" as "the date entered by the Court on the Preliminary Approval and Notice Order."

3.    Section 1.22 of the Settlement Agreement defines "Protected Persons" as:

Defendants, and each of their respective past and present officers, directors, employees, insurers, agents, representatives, investors, cus-

tomers, partners, joint-venturers, parents, subsidiaries (defined as any entity in which Defendant owns or controls, directly or indirectly, at least 50% of the voting securities or the right to elect a majority of the members of the board of directors, or by contract or otherwise controls such entity, or has the right to direct the management of such entity), affiliates, attorneys, successors and assigns; as well as all Persons that used, deployed or caused the deployment of, in online interactions with Class Members, an LSO on a computer or device owned, controlled, or used by a Class Member. Not included in this release is Six Apart for conduct prior to the September 2010 merger.

4.   Section 1.23 of the Settlement Agreement defines "Released Claims" as:

Any and all claims for payment, non-economic or injunctive relief of any kind or nature and any and all liabilities, demands, obligations, losses, actions, causes of action, damages, costs, expenses, attorneys' fees and any and all other claims of any nature whatsoever, based on any of the laws, regulations, statutes or rules cited, evidenced or referenced by such allegations and statements, or any other claims, including but not limited to: all claims, including unknown claims, as set forth in Section 5.3 below, arising from or relating to (i) any of the allegations, facts or statements set out in, or to any claim that was or could have been brought in any of the Complaints; (ii) Defendant's and its subsidiaries' and affiliates' use of LSOs; alleged depositing of LSOs on the computers of persons who accessed one or more of Defendant's or its subsidiaries' or affiliates' websites or other online content; and (iii) claims that Defendant or its subsidiaries or affiliates allegedly tracked users, shared their information or

displayed advertising to them without sufficient notice. Without limiting the foregoing, for avoidance of doubt, the definition of Released Claims is intended to provide any Protected Person that is a subsidiary or affiliate thereof with a full release from all claims Class Counsel presently is pursuing involving LSOs and similar technologies in other cases, specifically: *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW; *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW consolidated actions; *La Court v. Specific Media, Inc.*, No. 10-CV-1256 JVS (C.D. Cal.); *Aughenbaugh v. Ringleader Digital, Inc.*, No. 10-CV-1407-CJC-RNB (C.D. Cal.); and *Hillman v. Ringleader Digital, Inc.*, No. 10-CV-8315 (S.D.N.Y.); and such other similar case(s) as to which the Parties may agree in writing from time to time prior to the date approved by the Court for persons to object to or exclude themselves from the Settlement, which agreement shall not be unreasonably withheld by any Party and which writing(s) shall be deemed as amending and incorporated into this section. Notwithstanding the foregoing, excluded from Released Claims are all claims related to the use or deployment of non-VideoEgg LSOs by any Person other than the Defendant.

**B.      General Relief**

Defendant VideoEgg will establish a cash Settlement Fund of eight hundred twenty-five thousand dollars ($825,000), the net value of which will be distributed to one or more non-profit organizations to fund research and education projects and activities to promote consumer awareness and choice regarding the privacy, safety, and security of electronic information from and about consumers, and which projects and activities shall exclude the sponsorship or funding of litigation or lobbying efforts regarding specific legislation. Individual class members will not receive direct compensation. Out of the $825,000 fund, all attorneys'

1   fees, costs, any enhanced awards to the named Plaintiffs, settlement administra-

2   tion costs, and notice and administration costs will be paid as provided for under

3   the Settlement Agreement and described below.

4   **C.    Additional Relief**

5   In addition to the payments and credits discussed above, the Defendant will

6   provide the following relief.

7   1.    VideoEgg will not employ LSOs to: (i) "respawn" HTTP cookies;

8   and/or (ii) serve as an alternative method to HTTP cookies for storing information

9   about a user's web browsing history, unrelated to the delivery of content through

10  the Flash Player or the performance of the Flash Player in delivering such con-

11  tent, without adequate disclosure; and/or (iii) otherwise counteract any computer

12  user's decision to either prevent the use of or to delete previously created HTTP

13  cookies. (Settlement Agreement, sec. 4.19.)

14  2.    Payment of Notice and Administrative Fees: The full cost of notice

15  and administration and effectuation of the Settlement Agreement shall be paid out

16  of the Settlement Fund.

17  3.    Compensation of Class Representatives: In addition to any benefits

18  afforded under the Settlement, and in recognition of their efforts on behalf of the

19  class, subject to Court approval, representative Plaintiffs shall each receive

20  $1,500 as appropriate compensation for their time and effort serving as the class

21  representatives in the litigation against Defendants.

22  4.    Payment of Attorneys' Fees and Expenses: Defendants have agreed

23  that a payment out of the Settlement Fund to Class Counsel, subject to Court ap-

24  proval, of up to twenty five percent of the Settlement Fund in attorneys' fees and

25  for the reimbursement of Class Counsel's costs is fair and reasonable, and Defen-

26  dants will not object to or otherwise challenge Class Counsels' application for

27  payment of fees from the Settlement Fund if limited to such an amount. Proposed

28

1 Class Counsel has, in turn, agreed not to seek more than said amount from the
2 Court.

3 **D.    Release**

4        Upon the entry of a final order approving this settlement and following the
5 expiration of the time for appeal or the entry of a decision on such appeal, class
6 representatives and each and every member of the Settlement class who have not
7 timely filed a request to be excluded from the Settlement class will release and
8 forever discharge VideoEgg, any of its customers which deployed the technology
9 at issue in this case, as well as its subsidiaries and affiliates, for their deployment
10 of VideoEgg technologies in any of their online content, as well as their deploy-
11 ment of similar technologies not provided by VideoEgg in any of their online
12 content, as further explained for in the attached Settlement Agreement.

13 **III.    PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED**

14        Prior to granting preliminary approval of a settlement, the Court should de-
15 termine that the proposed settlement class is a proper class for settlement pur-
16 poses. *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Amchem Prods.*
17 *Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court may certify a class when
18 the plaintiffs demonstrate that the proposed class and proposed class represen-
19 tatives meet the following prerequisites of Rule 23(a): numerosity, commonality,
20 typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)–(4). After
21 meeting the strictures of Rule 23(a), the plaintiffs must then demonstrate that
22 common questions of law or fact predominate and that maintaining the suit as a
23 class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3).

24        In determining whether to certify a class, courts do not inquire into the
25 merits of the plaintiffs' claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,
26 177 (1974). As such, a court accepts the allegations of the plaintiffs' complaint as
27 true, but may consider matters beyond the pleadings to determine if the claims are

28

1   suitable for resolution on a class-wide basis. *Celano v. Marriot Int'l, Inc.*, 242

2   F.R.D. 544, 548 (N.D. Cal. 2007).

3   **A.     Numerosity Requirement Satified**

4           The numerosity prerequisite is met when "the class is so numerous that

5   joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1). To satisfy this re-

6   quirement there is no specific number required, nor are plaintiffs required to state

7   the exact number of potential class members. *Celano*, 242 F.R.D. at 548. Gener-

8   ally, the numerosity requirement is satisfied when the class comprises 40 or more

9   members. *See id.*, 242 F.R.D. at 549. In this case, based on VideoEgg's represen-

10  tations and Plaintiffs' research, the class is conservatively estimated to include

11  many thousands of Internet users in the United States, easily enough to satisfy the

12  numerosity requirement.

13  **B.     Commonality Requirement Satified**

14          The second threshold to certification requires that there be questions of law

15  or fact common to the class. Fed. R. Civ. P. 23(a)(2). "[P]laintiffs may demon-

16  strate commonality by showing that class members have shared legal issues by

17  divergent facts or that they share a common core of facts but base their claims for

18  relief on different legal theories." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177

19  (9th Cir. 2007). "[O]ne significant issue common to the class may be sufficient to

20  warrant certification." *Id.* As alleged in this case, all class members share the

21  common issue of having had undisclosed LSOs downloaded onto their computers.

22          These common issues among class members result in common factual and

23  legal questions such as: (1) whether Defendant, without authorization, created

24  and/or manipulated Adobe Flash Player local stored objects on computers to

25  which Class Members' enjoyed rights of possession superior to those of Defen-

26  dant; (2) for what purposes Defendant created and/or manipulated Adobe Flash

27  Player local stored objects on Class Members' computers; (3) whether Defendant

28  violated (i) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (ii) the Cali-

1   fornia Computer Crime Law, Penal Code § 502; (iii) the California Unfair Com-

2   petition Law, Business and Professions Code § 17200; (iv) the California Con-

3   sumer Legal Remedies Act, Civil Code § 1750; (4) whether Defendant misappro-

4   priated valuable information assets of Class Members; (5) whether Defendant

5   continues to retain valuable information assets from and about Class Members;

6   (6) what uses of such information were and continue to be exercised and/or facili-

7   tated by Defendant; and (7) whether Defendant has been unjustly enriched.

8       In addition, such common questions for the Settlement include whether the

9   Settlement is fair, and what is the proper form of notice. Accordingly, the com-

10  monality requirement is satisfied.

11  **C.    Typicality Requirement Satified**

12      Rule 23 next requires that a plaintiff's claims be typical of those of the

13  class. Fed. R. Civ. P. 23(a)(3). "[T]ypicality focuses on the relationship of facts

14  and issues between the class and its representatives." *Dukes*, 509 F.3d at 1184

15  fn.12 (citation omitted) ("[u]nder the rule's permissive standards, representative

16  claims are 'typical' if they are reasonably coextensive with those of absent class

17  members; they need not be substantially identical[;] some degree of individuality

18  is to be expected in all cases, but that specificity does not necessarily defeat typi-

19  cality"). Here, Defendant's alleged practice of using LSOs to circumvent users'

20  users' ability to control tracking and profiling and its failure to provide adequate

21  notice or choice about the use of LSOs is alleged to have resulted in Plaintiffs and

22  the proposed settlement class having their privacy rights violated, in breach of the

23  state and federal law. It is alleged that Plaintiffs and each proposed class member

24  were all subjected to Defendant's identical wrongful conduct in a nearly identical

25  manner. As such, Plaintiffs' claims are typical of those of the proposed class and

26  the requirements of Rule 23(a)(3) of the Federal Rules of Civil Procedure are met.

27

28

### D.     Adequate Representation Requirement Satified

The final Rule 23(a) prerequisite is that the proposed class representatives have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes*, 509 F.3d at 1185.

In this case, Plaintiffs share the same interests with the proposed class members—all have allegedly been harmed by Defendant's alleged, wrongful use of tracking devices. Therefore, Plaintiffs have no interests antagonistic to the interests of the proposed class.

Further, Plaintiffs' counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class action lawsuits that are similar in size, scope and complexity to the present case. (*See* Firm Resume of KamberLaw, LLC, a copy of which is submitted herewith as *Exhibit B*.) Accordingly, both Plaintiffs and their counsel have and will adequately represent the class.

### E.     Rule 23(b)(3) Requirements Met by Proposed Settlement Class

Once the subsection (a) prerequisites are satisfied, Federal Rule of Civil Procedure 23(b)(3) provides that a class action can be maintained where the questions of law and fact common to members of the class are predominant over any questions affecting only individuals, and where the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3; *Pierce v. County of Orange*, 519 F.3d 985, 991 n.5 (9th Cir. 2008). In this case and in the context of the proposed settlement, common issues of fact and law predominate. Defendant's alleged practice of using LSOs to circumvent users' blocking VideoEgg browser cookies and Defendants' failure to provide adequate notice or choice about the use of LSOs is al-

leged to have resulted in Plaintiffs and the proposed settlement class having their privacy rights violated in breach of the state and federal law and is common to the class members' claims and their damages, predominant to any issues applicable to any individual members of the class.

In addition, the instant class action is superior to any other method available for fairly, adequately, and efficiently resolving the class members' claims. Absent a class action, most members of the class would find the cost of litigating their claims to be prohibitive, and such multiple individual actions would be judicially inefficient. Also, because the action, with the Court's permission, will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 (citation omitted) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"). Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

## IV.   SCOTT A. KAMBER AND DAVID A. STAMPLEY OF KAMBERLAW SHOULD BE APPOINTED CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

As discussed above, proposed class counsel have extensive experience in prosecuting class actions and other complex litigation. (Stampley Decl. ¶ 10; s*ee also Exhibit B*.) Further, proposed class counsel have diligently investigated and prosecuted this matter, dedicating substantial resources to the investigation of the

claims at issue in the action, and have successfully negotiated the Settlement of this matter to the benefit of the class. (Stampley Decl. ¶ 12.) Counsel and class representatives, assisted by non-legal experts, spent over many months considering legal theories as well as investigating factual and technology-related issues regarding Defendant's use of LSOs in circumvention of users' browser controls and Defendant's related lack of adequate notice or choice regarding these practices. (Stampley Decl. ¶ 4.) Accordingly, the Court should appoint Plaintiffs' counsel to serve as class counsel for the proposed class pursuant to Rule 23(g) and Scott A. Kamber and David Stampley of KamberLaw, LLC as class counsel.

## V.   PRELIMINARILY APPROVAL WARRANTED

After certifying the Settlement class, the Court should preliminarily approve the Settlement. The procedure for review of a proposed class action settlement is a well-established, two-step process. Fed. R. Civ. P. 23(e); *see also* Alba & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (quoting *Manual for Complex Litigation* § 30.41 (3rd ed. 1995)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *In re Syncor ERISA Litig.*, 516 F.3d at 1110. Notice of a settlement should be sent where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The *Manual for Complex Litigation* characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court based on written

submissions and informal presentations from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39. The standard of scrutiny for preliminary approval is more relaxed than for final approval. *Armstrong v. Bd. of Schl. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a settlement is negotiated at arms' length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

In this case, there is no question that the proposed settlement is at least "within the range of possible approval." Only after extended arms-length negotiations conducted under the supervision of Rodney A. Max were the parties able to reach an agreement as to relief for the class. (Stampley Decl. ¶ 7.) Under that agreement, class members will benefit from Defendant's commitment not to employ LSOs as alleged in the Complaint and not to circumvent certain controls available to suers. The settlement's formulation for allocating settlement resources, which does not include compensation to members of the at-large class, is consistent with other settlements resolving claims that a defendant's insufficient online notice and choice violated class members' privacy. *See, e.g., In Re Dou-*

*bleClick, Inc. Privacy Litigation*, No. 00 Civ. 0641 (NRB) (S.D.N.Y. 2001) (DoubleClick, an Internet ad-serving company, revised its notice, choice, and data collection practices and distributed 300 million Internet banner ads bearing public information messages); *DeLise v. Fahrenheit Entm't*, Civ. Action No. CV-014297 (Cal. Sup. Ct. Marin Cty. Sept. 2001) (sellers of interactive music CD updated privacy policies, added warning labels to CDs, and purged previously collected data).

A comparison of the potential costs and benefits of consummating the Settlement Agreement versus continuing to prosecute this matter requires consideration of a number of factors. These factors include the strengths of the Plaintiffs' claims and ability to prevail at trial—in which class counsel remain confident—and the relief Plaintiffs anticipate from a successful trial outcome. Countervailing considerations include the legal and factual burdens Plaintiffs would bear in bringing the matter to trial, the defenses Defendant would assert—in which Defendant has expressed continued confidence (Stampley Decl. ¶ 6), the complexities of class action practice, and the risks that inevitably attend litigation, including the risk that Plaintiffs will not ultimately prevail and so will not secure any post-trial relief. Even if successful in prosecuting this matter, Plaintiffs would have forfeited the valuable, additional relief now being offered at Defendant's discretion, and which could not be compelled from Defendant following trial.

In advocating for approval of the Settlement Agreement, class counsel are guided in part by their collective experience, awareness of the costs and risks described above, and attention to the interests of Plaintiffs and the putative class, particularly given the proposed settlement's substantial and prompt relief and meaningful long-term benefits. It is apparent the proposed settlement serves the best interests of class members and falls well "within the range of possible approval," meriting the Court's preliminary approval.

## VI.   PROPOSED CLASS NOTICE PLAN

Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) similarly says, "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class member." *Newberg on Class Actions*, §11.53, at 167 (4th Ed. 2002).

The proposed settlement includes the parties' agreement for providing notice through publication as well as a dedicated website. (Settlement Agreement, secs. 4.1-4.3.) The parties' notice plan has been submitted to the Court, incorporated into the notice plan for *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW (Dkts. 44-1, 44-2) and *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW (Dkts. 66-1, 66-2).

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant preliminary approval of the proposed Settlement Agreement and enter the proposed order separately submitted in the *Quantcast* and *Clearspring* matters (Dkt. 66), and grant such further relief the Court deems reasonable and just.

DATED: February 18, 2011            KAMBERLAW, LLC

s/Avi Kreitenberg
Avi Kreitenberg (SBN 266571)
akreitenberg@kamberlaw.com
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, California 90035
Telephone:   (310) 400-1050
Facsimile:   (310) 400-1056

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Scott A. Kamber
skamber@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:   (212) 920-3072
Facsimile:   (212) 920-3081

David A. Stampley
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:   (212) 920-3072
Facsimile:   (212) 920-3081

Joseph H. Malley
malleylaw@gmail.com
Law Office of Joseph H. Malley
1045 North Zang Boulevard
Dallas, TX 75208
Telephone:   (214) 943-6100
Facsimile:   (214) 943-6170